IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PRISONERS LEGAL ADVOCACY NETWORK,<br><br>Plaintiff,<br><br>v.<br><br>THE HONORABLE JOHN CARNEY, in his official capacity as Governor of the State of Delaware, THE HONORABLE ANTHONY J. ALBENCE, in his official capacity as State Election Commissioner of the Delaware Department of Elections, and THE HONORABLE TERRA TAYLOR, in her official capacity as Acting Commissioner of the Delaware Department of Correction,<br><br>Defendants. | ) | Civ. No. 23-1397-JLH |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S**
**<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

Kenneth L. Wan (#5667)
Zi-Xiang Shen (#6072)
Deputy Attorneys General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Kenneth.Wan@delaware.gov
Zi-Xiang.Shen@delaware.gov
*Attorneys for Defendants*

Date: February 16, 2024

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

NATURE AND STAGE OF THE PROCEEDINGS .......... 1

SUMMARY OF ARGUMENT .......... 1

STATEMENT OF FACTS .......... 1

A. Delaware's Unified Prison System .......... 1

B. Delaware's Pretrial Release System .......... 2

C. Absentee Voting in Delaware .......... 3

D. Absentee Voting by Incarcerated Individuals .......... 4

E. The Delaware Supreme Court's Decision in *Albence v. Higgin* .......... 5

F. ACLU Demands the Implementation of In-person Voting in DOC Facilities .......... 6

ARGUMENT .......... 7

I. THE COURT SHOULD ABSTAIN FROM HEARING PLAINTIFF'S CLAIMS .......... 7

II. THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR PRELIMINARY RELIEF .......... 10

A. Legal Standards .......... 10

B. Plaintiff is Unlikely to Succeed on the Merits .......... 11

C. Plaintiff Has Not Established Irreparable Harm .......... 18

D. The Balance of the Harms Weighs Against a Preliminary Injunction .......... 19

CONCLUSION .......... 20

**TABLE OF AUTHORITIES**

**Cases:**


*ACLU v. Reno*, 31 F. Supp. 2d 473 (E.D. Pa. 1999) .......... 19

*Albence v. Higgin*, 285 A.3d 840 (Table) (Del. Oct. 7, 2022) .......... 5

*Albence v. Higgin*, 295 A.3d 1065 (Del. 2022) .......... *passim*

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) .......... *passim*

*Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235 (3d Cir. 1996) .......... 9

*Bullock v. Carney*, 463 F. Supp. 3d 519 (D. Del. 2020) .......... 18

*Burdick v. Takushi*, 504 U.S. 428 (1992) .......... *passim*

*Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628 (3d Cir. 1991) .......... 7

*Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235 (1972) .......... 11

*Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018) .......... 10

*Doe v. Del. State Univ. Bd. of Trs.*, 2021 WL 2036670 (D. Del. May 21, 2021) .......... 10

*Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146 (3d Cir. 1999) .......... 13

*Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211 (3d Cir. 2003) .......... 12

*Fouad v. Milton Hershey Sch. and Tr.*, 2020 WL 8254470 (M.D. Pa. Feb. 19, 2020) .......... 13

*Free Speech Coal., Inc. v. Attorney Gen. United States*, 825 F.3d 149 (3d Cir. 2016) .......... 11, 12

*Georgevich v. Strauss*, 772 F.2d 1078 (3d Cir. 1985) .......... 8

*Hill v. Smith*, 2005 WL 2666597 (M.D. Pa. Oct. 19, 2005) .......... 20

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989) .......... 18

*Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187 (3d Cir. 2004) .......... 12

*Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) .......... 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 12

*Macchione v. Coordinator Adm'r in D.C.*, 591 F. App'x 48 (3d Cir. 2014)................................18

*Marxe v. Jackson*, 833 F.2d 1121 (3d Cir. 1987) .............................................................18

*Mazo v. N.J. Sec'y of State*, 54 F.4th 124 (3d Cir. 2022).........................................................14

*McDonald v. Board of Election Commissioners of Chicago,* 394 U.S. 802 (1969) ...............16, 17

*NAACP Phila. Branch v. Ridge*, 2000 WL 1146619 (E.D. Pa. Aug. 14, 2000) ........................9, 10

*Nat'l Shooting Sports Found. v. Jennings*, 2023 WL 5835812 (D. Del. Sept. 8, 2023) ..............12

*O'Brien v. Skinner*, 414 U.S. 524 (1974)..........................................................................8

*Peachlum v. City of York*, 333 F.3d 429 (3d Cir. 2003) ...........................................................12

*Punnett v. Carter*, 621 F.2d 578 (3d Cir. 1980)....................................................11, 20

*Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496 (1941)........................ *passim*

*Rauf v. State*, 145 A.3d 430 (Del. 2016)..........................................................................2

*Rodriquez v. 32nd Legislature of the Virgin Islands*, 859 F.3d 199 (3d Cir. 2017) ......................11

*SAM Party of N.Y. v. Kosinski*, 987 F.3d 267 (2d Cir. 2021) ....................................................15

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ........................................................12

*Takeda Pharms. USA, Inc. v. West-Ward Pharm. Corp.*, 2014 WL 5088690 (D. Del. Oct. 9, 2014) ..........................................................................................................10

*Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131 (3d Cir. 2013)..........................10

*Trump for President, Inc. v. Boockvar*, 481 F. Supp. 3d 476 (W.D. Pa. 2020)..............................9

**Statutes and Other Authorities:**

11 *Del. C.* § 2101 ..........................................................................................2

11 *Del. C.* § 2102 ..........................................................................................2

11 *Del. C.* § 2110 ..........................................................................................3

11 *Del. C.* § 4206 ..........................................................................................2

15 *Del*. C. § 5502 ....................................................................................................3, 4

15 *Del*. C. § 5503 ....................................................................................................4

15 *Del*. C. § 5506 ....................................................................................................4

15 *Del*. C. § 5512 ....................................................................................................4

83 *Del. Laws*, c.353....................................................................................................5

83 *Del. Laws*, c.354....................................................................................................5

Del. Const. Art. I § 12....................................................................................................2

Del. Const. Art. V § 2....................................................................................................4

Del. Const. Art. V § 4A .................................................................................... *passim*

U.S. Const. Art. I § 4....................................................................................................14

U.S. Const. Art. III § 2....................................................................................................11

11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2949
(3d ed.) ....................................................................................................18

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Prisoners Legal Advocacy Network ("Plaintiff" or "PLAN") sued the Governor of Delaware, the State Election Commissioner of the Delaware Department of Elections ("DOE"), and the Commissioner of the Delaware Department of Correction ("DOC"), seeking an order requiring Defendants to install in-person voting machines at DOC facilities in time for the November 2024 general election. PLAN filed its Complaint on December 7, 2023. D.I. 1. PLAN filed its Motion for Early Preliminary Injunction Hearing Date, Preliminary Injunction, and Temporary Restraining Order (the "Motion"), and Opening Brief,[1] on December 15, 2023. D.I. 9, 10. Defendants submit this brief in opposition to the Motion.

## SUMMARY OF ARGUMENT

1. The Court should abstain from hearing Plaintiff's claims under the *Pullman* abstention doctrine.

2. Plaintiff is not entitled to a preliminary injunction because it is unlikely to succeed on the merits of its claims, Plaintiff has not established irreparable harm, and the balance of the harms weighs against a preliminary injunction.

## STATEMENT OF FACTS

### A. Delaware's Unified Prison System.

The DOC is a state agency that operates and oversees Delaware's correctional system. Delaware is one of only six states that has a "unified" prison system. Declaration of Commissioner Terra Taylor ("Taylor Decl.") ¶ 3. This means that the DOC has responsibility for all charged or convicted individuals, including pretrial detention, community supervision, probation and parole, and incarceration. Taylor Decl. ¶ 3. Within the unified system, the DOC maintains a five-level

[1] Plaintiff's Opening Brief is cited herein as "OB __."

system of supervision, with 24-hour incarceration at Level V. Taylor Decl. ¶ 4. Level V includes sentenced offenders and detainees awaiting trial. Taylor Decl. ¶ 5.

On June 30, 2023, there were 1,162 pretrial detainees and 50 inmates serving sentences for which a misdemeanor offense was the lead charge[2] in Level V facilities. Taylor Decl. ¶ 9. Under the Delaware Code, the presumptive sentences for misdemeanors are up to one year of incarceration for Class A offenses and up to 6 months of incarceration for Class B offenses. 11 *Del. C.* § 4206(a)-(b).[3] For fiscal year 2022, the average length of detention for pretrial detainees in Level V was 1.3 months and the average length of incarceration for "jail" sentences was 3.05 months. OB Ex. 9 at 21. PLAN incorrectly asserts that the latter figure reflects sentences for "persons serving time for a misdemeanor conviction." OB at 7. "Jail" refers to a sentence of 365 days or less, whether for felony, misdemeanor, or a combination of felony and misdemeanor offenses. OB Ex. 9 at 22; Taylor Decl. ¶ 10.

### B. <u>Delaware's Pretrial Release System.</u>

Title 11, Chapter 21 of the Delaware Code governs the procedures for releasing from DOC custody individuals charged with criminal offenses pending trial. Delaware courts "are empowered and encouraged to make individualized decisions about terms and conditions of pretrial release." 11 *Del. C.* § 2101. All criminal offenses are considered "bailable" unless punishable by death. 11 *Del. C.* § 2102(3); Del. Const. Art. I § 12.[4] However, Section 2105 requires the court to determine whether to permit release on bond and if so, whether such bond must be secured.

---

[2] "Lead charge" refers to the most serious remaining offense of the sentence being served at Level V, by type and classification. Taylor Decl. ¶ 9.
[3] The classifications and elements of criminal offenses are set forth in Chapter 5 of Title 11.
[4] The death penalty in Delaware was effectively abolished in 2016. *See Rauf v. State*, 145 A.3d 430 (Del. 2016).

Delaware law further provides for review and modification of pretrial release conditions, including bail. Under Section 2110(a), with respect to defendants who have been detained for more than 72 hours from initial presentment, the court must on its own initiative review, within 10 days of detention, the conditions of release to determine whether to modify the conditions. *See also, e.g.*, Interim Rule 5.3 of the Delaware Superior Court Criminal Rules. Defendants, regardless of custody status, are also entitled to petition the court to modify the conditions of pretrial release. 11 *Del. C.* § 2110(b). The court must then rule on the request to modify conditions and document for the record the reasons for its decision. *Id.* § 2110(d)-(f).

### C. Absentee Voting in Delaware

The DOE is a state agency that administers all aspects of elections in Delaware, including voter education and registration, campaign finance, and conducting elections. Declaration of State Election Commissioner Anthony J. Albence ("Albence Decl.") ¶ 2. Title 15 of the Delaware Code governs elections and sets forth the DOE's authority to implement the statutory provisions for elections.

Article V, Section 4A of the Delaware Constitution provides for voting via absentee ballot for voters who will be absent from their regular polling place for a general election due to certain reasons:

> either because of being in the public service of the United States or of this State, or his or her spouse or dependents when residing with or accompanying him or her, because of the nature of his or her business or occupation, because of his or her sickness or physical disability, because of his or her absence from the district while on vacation, or because of the tenets or teachings of his or her religion . . . .

Title 15, Chapter 55 of the Delaware Code governs the procedures for absentee voting in all primary, general, and special elections in Delaware. Consistent with Article V, Section 4A of the Delaware Constitution, Section 5502 enumerates the reasons for which a voter "unable to appear"

to vote in-person is eligible to vote via absentee ballot. 15 *Del. C.* § 5502. Eligible voters seeking to vote by absentee ballot must submit to the DOE an application requesting an absentee ballot. 15 *Del. C.* § 5503. Delaware statute requires the Attorney General to "personally approve[]" the absentee ballot application prepared by the DOE. 15 *Del. C.* § 5503(d)(5). The Attorney General must also prepare the instructions provided to voters for completing and submitting an absentee ballot (15 *Del. C.* § 5506) and personally approve the envelopes used for absentee voting (15 *Del. C.* § 5512).

**D. <u>Absentee Voting by Incarcerated Individuals.</u>**

Article V, Section 2(a) of the Delaware Constitution disqualifies from voting individuals who have been convicted of a felony. Article V, Section 2(b) further provides that individuals previously disqualified due to a felony conviction shall have their disqualification removed upon pardon or completing their sentence, including probation, parole and suspension, unless the conviction was for murder, manslaughter, an "offense against public administration" such as bribery, or a sexual offense.

Recognizing that otherwise eligible individuals in DOC custody, such as detainees awaiting trial, may not be able to vote in-person, since at least 1980 the DOE has treated incarceration status to fall under an enumerated category for absentee voting. Albence Decl. ¶ 3. Historically, the DOE has applied either the physical disability classification or the business or occupation classification to incarcerated individuals. Albence Decl. ¶ 3. The absentee ballot application prepared by the DOE requires the voter to indicate the reason for voting by absentee ballot. Ex. E. Since 2018, the absentee ballot application has stated that the "business or occupation" reason includes "otherwise eligible persons who are incarcerated." Albence Decl. ¶ 4; Ex. E.

The DOC and DOE have worked together to encourage and facilitate voting by eligible incarcerated individuals. During the 2022 election cycle, these efforts included posting information regarding voter registration and voting procedures, providing voter registration and absentee ballot applications, and training DOC staff to assist incarcerated individuals. Taylor Decl. ¶¶ 11-14; Exs. A-D. The DOC also made certain changes to standard procedures, including mail security protocols, to facilitate absentee voting by incarcerated individuals. Taylor Decl. ¶ 16. The DOC plans to continue the voter education and staff training efforts and procedure changes for the 2024 election cycle as well. Taylor Decl. ¶ 15-16.

### E. The Delaware Supreme Court's Decision in *Albence v. Higgin*.

In the summer of 2022, Delaware enacted a new statute that allowed all registered voters to cast ballots by mail. 83 *Del. Laws*, c.353 (the "Vote-by-Mail Statute"). The Vote-by-Mail Statute became subject to a lawsuit that challenged the statute as invalid with respect to general elections under Article V, Section 4A of the Delaware Constitution. *See generally Albence v. Higgin*, 295 A.3d 1065 (Del. 2022).[5] Shortly before the November 2022 general election, the Delaware Supreme Court issued an order finding the Vote-by-Mail Statute and the Same-Day Registration Statute to violate the Delaware Constitution. 285 A.3d 840 (Table) (Del. Oct. 7, 2022). In its full written opinion, the court determined that the categories for absentee voting enumerated under Section 4A are "exhaustive" and excluded the addition of further categories absent constitutional amendment. 295 A.3d at 1093-94. Because the Vote-by-Mail Statute allowed voters to vote without attending their polling place for reasons beyond those contemplated by Section 4A, the court found the statute to violate the Delaware Constitution. *Id.*

---

[5] The lawsuit also challenged the validity of a newly enacted statute extending the deadline for voter registration to include Election Day. 83 *Del. Laws*, c.354 (the "Same-Day Registration Statute").

### F. <u>ACLU Demands the Implementation of In-person Voting in DOC Facilities.</u>

In the midst of the *Albence v. Higgin* proceedings in the Delaware Court of Chancery and Delaware Supreme Court, the American Civil Liberties Union of Delaware ("ACLU")[6] began demanding that the DOE and DOC install voting machines in DOC facilities to allow eligible individuals in custody to vote in-person. OB Ex. 7. Because DOC and DOE continued to construe applicable Delaware law to allow incarcerated individuals otherwise unable to vote in-person to vote via absentee ballot, the agencies did not accede to ACLU's demand.

The DOE estimates the costs of equipping DOC facilities with voting machines and staffing and operating such polling places to be significant. Including the ten-day early voting period, the DOE anticipates that the per-election total financial cost of the undertaking to be nearly $1 million. Albence Decl. ¶¶ 10-11; Exs. F-G. In addition to the financial costs, the DOE has in recent election cycles experienced ongoing challenges in adequately staffing polling places due to the increasing average age of poll workers, additional demands placed on workers due to statutory changes, additional staffing requirements from the introduction of early voting, and the increasingly politically charged environment of elections. Albence Decl. ¶ 12. The DOE also anticipates facing challenges in recruiting new poll workers to be assigned to correctional institutions or reallocating more experienced workers, who are typically assigned to the highest-volume polling places. Albence Decl. ¶ 13.

[6] The exact relationship between ACLU and the Plaintiff in this case is unclear; Defendants understand ACLU to both represent PLAN in the litigation and serve as an advocacy "partner" to PLAN. *See* OB at 3.

## ARGUMENT

### I. THE COURT SHOULD ABSTAIN FROM HEARING PLAINTIFF'S CLAIMS.

This Court should abstain from considering the merits of Plaintiff's claims under *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496 (1941). Under the *Pullman* abstention doctrine, "when a federal court is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question, abstention may be justified under principles of comity to avoid 'needless friction with state policies.'" *Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 631 (3d Cir. 1991) (quoting *Pullman*, 312 U.S. at 500). The application of *Pullman* first requires the existence of three "special circumstances":

> (1) Uncertain issues of state law underlying the federal constitutional claims brought in federal court; (2) State law issues amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims; (3) A federal court's erroneous construction of state law would be disruptive of important state policies.

*Id.* If those "special circumstances" exist, this Court then determines in its discretion whether to abstain in light of "the circumstances of the particular case, based on the weight of these criteria and other relevant factors." *Id.*

Here, *Pullman* abstention is appropriate. Plaintiff's entire claim for violations of federal constitutional rights rests on a single proposition: that under the Delaware Supreme Court's *Higgin* ruling, absentee voting by inmates and detainees would violate the Delaware Constitution. According to Plaintiff, eligible inmates and detainees are completely deprived of the right to vote because (i) Delaware's policy of allowing those voters to vote via absentee ballot is unconstitutional, and (ii) incarcerated individuals otherwise cannot vote in-person. The "special circumstances" for *Pullman* abstention exist. First, Plaintiff's federal constitutional claims are

premised on uncertain issues of state law. According to Plaintiff, it is settled that incarcerated individuals cannot cast absentee ballots. But although *Higgin* discussed absentee voting under Article V, § 4A of the Delaware Constitution, the case did not address the central legal issue in this case, which Plaintiff has simply ignored: does one's status as an incarcerated individual fall under one of Section 4A's enumerated categories for absentee voting? The answer to the question implicates important matters of Delaware state constitutional law and longstanding state elections policy.

To determine the merits of Plaintiff's claims, this Court would be required to interpret the *Higgin* opinion, issued barely more than a year ago, to decide whether state officials are in violation of the state constitution. The *Higgin* court found that the categories of absentee voting under Section 4A are exclusive and the state legislature may not add further categories absent constitutional amendment. 295 A.3d at 1093-94. But a determination that incarcerated individuals fall under one of the Section 4A categories would not run afoul of *Higgin*. For example, the United States Supreme Court has recognized that an incarcerated individual is "disabled from voting . . . by reason of not being able physically—in the very literal sense—to go to the polls on election day." *O'Brien v. Skinner*, 414 U.S. 524, 528 (1974).

Second, this case implicates state law issues amenable to state court interpretation that would narrow or obviate adjudication of Plaintiff's federal constitutional claims. "[W]here state law appears to resolve the sole issue in the case to plaintiffs' satisfaction, and where the parties' only real disagreement concerns the propriety of federal intervention, the case may be more appropriately resolved in state court." *Georgevich v. Strauss*, 772 F.2d 1078, 1094-95 (3d Cir. 1985). If absentee voting by incarcerated individuals is valid under the Delaware Constitution, as the State understands it to be, PLAN can have no quarrel, from a federal constitutional perspective,

with the lack of in-person voting machines in DOC facilities. And PLAN does not (nor could it) point to any indication that Defendants would ignore a court's determination that absentee voting is *invalid*. At bottom, PLAN and Defendants disagree regarding the import of *Higgin* and interpretation of Section 4A, issues that are squarely within the province of the Delaware state courts.

Third, an erroneous interpretation of the Delaware Constitution from this Court would pose serious disruption to important state policies. Defendants do not doubt this Court would fairly and carefully examine the issues. But "[u]ltimately, *Pullman* abstention is a doctrine rooted in basic principles of federalism . . . [a]nd under the Constitution, the critical responsibility of administering elections is reserved for the states." *Trump for President, Inc. v. Boockvar*, 481 F. Supp. 3d 476, 499 (W.D. Pa. 2020) (internal quotation marks and citations omitted). The Delaware General Assembly has empowered the DOE to establish policies and procedures enabling eligible citizens to exercise their right to vote. If this Court were to decide—erroneously—that absentee voting by incarcerated individuals is invalid, such ruling would disrupt important state policies concerning voting rights and election participation. *See NAACP Phila. Branch v. Ridge*, 2000 WL 1146619, at *7 (E.D. Pa. Aug. 14, 2000) ("The court finds that voting regulations implicate important state policies and that an erroneous construction of the [voter registration statute] would be disruptive.").

Finally, the Court should exercise its discretion to abstain "by weighing such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants." *Ridge*, 2000 WL 1146619, at *7 (citing *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1270 (3d Cir. 1996)). Here, the litigation has only been pending since December 2023 even though the challenged elections policies have been in place for decades. Plaintiff has "ample time" to "pursue a determination by the state courts" prior to the general

election, "and there is no reason to presume that a prompt resolution of the issue cannot be obtained from the state courts." *Ridge*, 2000 WL 1146619, at *8 (abstaining three months before the general election from hearing the merits of a constitutional challenge to a state statute prohibiting ex-felons from registering to vote).

## II. THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR PRELIMINARY RELIEF.

### A. Legal Standards.

Even if the Court determines to hear Plaintiff's claims, Plaintiff cannot establish it is entitled to preliminary injunctive relief. A preliminary injunction is an extraordinary remedy that should be granted in limited circumstances only if the movant carries its burden of proving that the circumstances clearly demand it. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). A motion for a preliminary injunction "may be granted only when the moving party shows (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018). "A request for a [temporary restraining order] is governed by the same general standards that govern the issuance of a preliminary injunction." *Takeda Pharms. USA, Inc. v. West-Ward Pharm. Corp.*, 2014 WL 5088690, at *1 (D. Del. Oct. 9, 2014).

In this case, Plaintiff seeks a mandatory preliminary injunction. An injunction is mandatory if "such an injunction would alter the status quo by commanding some positive act." *Doe v. Del. State Univ. Bd. of Trs.*, 2021 WL 2036670, at *2 (D. Del. May 21, 2021) (internal quotation marks and citation omitted). "Mandatory injunctive relief is only to be granted sparingly, being appropriate only 'in the most unusual case.'" *Id.* (quoting *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)). "[W]hen the preliminary

injunction is directed not merely at preserving the status quo but, as in this case, at providing mandatory relief, the burden on the moving party is particularly heavy." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980). The movants' "right to relief must be indisputably clear." *Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235, 1235 (1972).

### B. Plaintiff is Unlikely to Succeed on the Merits.

PLAN seeks a mandatory injunction against Defendants and thus bears a particularly heavy burden to satisfy the elements for injunctive relief. PLAN attempts to disguise the nature of its request through artful drafting, stating in its proposed order: "the defendants are temporarily restrained and enjoined from failing, or refusing, to provide in person polling places for voting at Delaware Department of Corrections facilities to eligible incarcerated voters." D.I. 9-1 at 2. But the status quo is that DOC facilities do not serve as in-person polling sites and eligible inmates and detainees can vote via absentee ballot. Plaintiff seeks to *alter* the state's decades-long practice by compelling the installation of voting machines. Plaintiff is unlikely to succeed on the merits—much less establish an "indisputably clear" right to relief. *Whitcomb*, 409 U.S. at 1235.

#### i. No Article III Case or Controversy

PLAN cannot obtain preliminary injunctive relief because its claims are not justiciable. "Under Article III of the Constitution, a federal court may exercise judicial power over only actual, ongoing cases or controversies." *Rodriquez v. 32nd Legislature of the Virgin Islands*, 859 F.3d 199, 207 (3d Cir. 2017) (citations and internal quotation marks omitted). Article III justiciability implicates issues of standing, ripeness, and mootness. "Standing to seek injunctive relief requires a plaintiff to show (1) that he is under threat of suffering injury in fact that is concreate and particularized; (2) the threat must be actual and imminent, not conjectural or hypothetical; (3) it must be fairly traceable to the challenged action of the defendant; and (4) it must be likely that a

favorable judicial decision will prevent or redress the injury." *Free Speech Coal., Inc. v. Attorney Gen. United States*, 825 F.3d 149, 165 (3d Cir. 2016) (citations and internal quotation marks omitted). Standing is assessed as of the time the plaintiff files its complaint. *Nat'l Shooting Sports Found. v. Jennings*, 2023 WL 5835812, at *2 (D. Del. Sept. 8, 2023). "The ripeness doctrine serves to 'determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)). "The court's ability to grant effective relief lies at the heart of the mootness doctrine. That is, if developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) (internal quotation marks and citations omitted).

Where, as here, a plaintiff asserts organizational standing on behalf of its members, the organization must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). The organization thus must "submit affidavits or other evidence showing, through specific facts . . . that one or more of [the organization's] members would thereby be 'directly' affected apart from their 'special interest' in the subject." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992) (citation and internal quotation marks omitted).

Despite its rhetoric and citations to various advocacy pieces, PLAN has failed to establish that a single member has standing. Nowhere does PLAN identify *any* individual who intends to vote in the 2024 general election, anticipates remaining incarcerated until and through the voting

period in the election, and fears voting absentee. Plaintiff did not submit a single affidavit or otherwise identify any individual who has suffered or faces direct harm. For this reason alone, Plaintiff falls far short of meeting its burden to establish standing. *See Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 152 (3d Cir. 1999) ("[M]ere allegations will not support standing at the preliminary injunction stage."). And because PLAN is incorrect about the impact or meaning of *Higgin*, no member has a ripe claim. *See Fouad v. Milton Hershey Sch. and Tr.*, 2020 WL 8254470, at *34 (M.D. Pa. Feb. 19, 2020) (finding request for declaratory judgment premised on an unsettled issue of state constitutional law to be both unripe and outside the federal court's jurisdiction).

Furthermore, the *only* record evidence PLAN has submitted demonstrates if there is a ripe claim, it has likely become, or is likely to become, moot. Based on the statistics PLAN submitted, the average length of pretrial detention is between 1 and 2 months and the average length of incarceration for inmates serving jail sentences is approximately 3 months. OB at 7; OB Ex. 9 at 21.[7] This record is more consistent with the conclusion that a PLAN member in DOC custody at the time of filing has been released or will be released long before the election than with a PLAN member remaining incarcerated or detained during the election.

Under these circumstances, the Court should refrain from issuing a mandatory injunction that will be highly disruptive and, perhaps, a mere advisory opinion.

**ii. No Violation of the Right to Vote**

PLAN is unlikely to succeed on the merits of its claim that the state is violating a fundamental right of incarcerated individuals to vote. Plaintiff invokes the *Anderson-Burdick*

[7] As discussed *supra*, PLAN incorrectly states that jail sentences are limited to individuals sentenced for misdemeanor offenses only.

sliding scale test[8] to argue that Defendants have imposed a "severe burden" on eligible inmates and detainees' right to vote that fails to survive strict scrutiny. OB at 8-13. The federal constitution does not confer a specific right to vote, but rather, grants to the states the power to regulate elections. U.S. Const. Art. I § 4; *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 136-37 (3d Cir. 2022). In challenges to state elections laws and regulations, federal court may employ *Anderson-Burdick*, which is a "flexible" test that "requires the reviewing court to (1) determine the 'character and magnitude' of the burden that the challenged law imposes on constitutional rights, and (2) apply the level of scrutiny corresponding to that burden." *Mazo*, 54 F.4th at 137 (citing *Burdick*, 504 U.S. at 434). "If the burden is severe, the court must apply exacting scrutiny and decide if the law is narrowly tailored and advances a compelling state interest. But if the law imposes only reasonable, nondiscriminatory restrictions, the court may use *Anderson-Burdick*'s sliding scale approach under which a State need only show that its legitimate interests are sufficient to outweigh the limited burden." *Id.* (citations and internal quotation marks omitted) (cleaned up).

Plaintiff's challenge fails at a fundamental level because there is no burden on eligible individuals' right to vote. There is no statute or regulation prohibiting eligible inmates and detainees from voting; nor have Defendants obstructed their voting. To the contrary: the DOE specifically identifies incarceration status on the absentee ballot application and DOC and DOE implemented outreach and educational efforts to incarcerated individuals and training for staff. There is no allegation (nor could there be) of any interference with inmates' and detainees' registration, access to absentee ballots, or submission of absentee ballots, or that such absentee ballots are refused. To the extent there is any arguable burden on inmates and detainees' right to vote, it is minimal; they currently do not *also* have access to in-person voting in DOC facilities.

---

[8] *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

But Plaintiff has cited no authority to establish that PLAN's members have a right to access multiple options for voting. In comparison, the effort PLAN seeks to compel the state to undertake is substantial in terms of public funds, staffing, and resources. *See* Albence Decl. ¶¶ 10-13. The state's interest in putting finite public resources to the best use sufficiently outweighs the added convenience for eligible inmates and detainees. *See, e.g.*, *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 276-78 (2d Cir. 2021) (finding state's legitimate interest in "conserving limited resources devoted to public financing of state elections" to sufficiently outweigh the burden of state's ballot qualification requirements on political party under *Anderson-Burdick*).

Ironically, Plaintiff's claim of a "severe burden" on voting is premised on eligible inmates and detainees' *access* to absentee ballots. The entirety of Plaintiff's argument rests on the proposition that the DOC and DOE have misinterpreted the Delaware Constitution and applicable case law in continuing to facilitate absentee voting by eligible inmates and detainees. But PLAN has not directly challenged the absentee ballot policies themselves as a violation of the Delaware Constitution or the Delaware Code.

Nor do Plaintiff's speculative concerns about a "chilling effect" establish a constitutional violation. OB at 11-12. As an initial matter, Plaintiff offers no legal authority in support. Furthermore, Plaintiff's references to criminal prosecutions of voters in other states are misplaced, as are Plaintiff's hypothetical concerns about challenges to ballots. Here, the Delaware Department of Justice affirmatively represented, in view of the state's absentee voting policies and laws, it would not prosecute any eligible inmates or detainees for voting via absentee ballot. OB Ex. 4.[9] Indeed, the Attorney General personally approves the absentee ballot application and

[9] The letter provided by the DOJ was in the specific context of the 2022 election cycle, but PLAN has not offered any evidence to suggest the Attorney General's position has changed or will change with respect to the 2024 elections or future elections.

related materials. Moreover, the DOE and DOC have repeatedly confirmed that the agencies would continue to facilitate absentee voting by eligible inmates and detainees. OB Exs. 1, 2, 3. Finally, PLAN has not established that any other person has interest in and is likely to challenge these ballots; this is pure speculation.

**iii. No Equal Protection Violation**

PLAN is unlikely to succeed on its claim that Delaware elections policies violate pretrial detainees' rights under the Equal Protection clause of the Fourteenth Amendment. According to PLAN, pretrial detainees' Equal Protection rights are violated because those who are awaiting trial in DOC custody cannot vote while others who are awaiting trial, outside of DOC custody, can vote. OB at 13-16. The difference, according to PLAN, between those two groups of individuals is an invalid wealth classification because those in DOC custody cannot post bail. OB at 14-15. This argument assumes that pretrial detainees would otherwise be on release if not for financial limitations. Moreover, the argument is an attempt to bootstrap the result of state courts' considered bail decisions into a challenge of state election policies. Delaware's *election policies* do not create distinctions, "arbitrary" or otherwise, between pretrial detainees and other voters, nor do they condition the right to vote on financial ability. *All* eligible voters have access to the ballot, whether or not they are in DOC custody.

But even assuming *arguendo* that PLAN is correct that incarcerated individuals may not vote via absentee ballot, Plaintiff still cannot succeed on its claim. The inability to vote absentee is not in itself unconstitutional, and Plaintiff has made no attempt to demonstrate that any member indisputably lacks another path to the ballot box. The United States Supreme Court's decision in *McDonald v. Board of Election Commissioners of Chicago* is dispositive here. In that case, pretrial detainees applied for absentee ballots under Illinois statutes that allowed absentee voting for

reasons such as medical disability, religious holidays, or being outside the county, but state elections officials denied the applications on the basis the detainees did not fall under an authorized category for absentee voting. 394 U.S. 802, 803-05 (1969). The detainees raised an Equal Protection challenge, contending the distinction between the detainees (who either could not afford bail or were ineligible for bail) and others able to vote absentee was arbitrary. *Id.* at 806. The Court disagreed, finding it was "not the right to vote that is at stake here but a claimed right to receive absentee ballots." *Id.* at 807. The Court recognized the state legislature's authority to decide how to regulate absentee voting and that it might be relatively easier or harder for different groups to submit absentee ballots. *Id.* at 807-808. Notably, the Court concluded the pretrial detainees had not established a record that they were "absolutely prohibited from exercising the franchise" and the Court declined to assume the legislature had sought to disenfranchise detainees. *Id.* at 808-09. The Court observed:

> Appellants agree that the record is barren of any indication that the State might not, for instance, possibly furnish the jails with special polling booths or facilities on election day, or provide guarded transportation to the polls themselves for certain inmates, or entertain motions for temporary reductions in bail to allow some inmates to get to the polls on their own.

*Id.* at 808 n.6. PLAN has developed a similarly scant record here. In response to PLAN's requests and in view of the existing absentee ballot provisions, the DOE and DOC declined to equip prison facilities with voting machines. But PLAN has *not* shown that the agencies would refuse to install voting machines or explore alternative arrangements if absentee voting were unavailable. Nor has PLAN proffered any evidence that any pretrial detainee member would be unable to petition a state court for a bail modification to be able to vote in-person or that the state courts would refuse to consider such an application. PLAN has failed to establish that pretrial detainees face an absolute bar on their right to vote because voting machines are unavailable in DOC facilities.

### C. Plaintiff Has Not Established Irreparable Harm.

Plaintiff has failed to establish that its members will suffer irreparable harm if the Court denies the request for a preliminary injunction. Indeed, it has submitted no evidence on this point at all. "The irreparable harm alleged must be actual and imminent, not merely speculative." *Macchione v. Coordinator Adm'r in D.C.*, 591 F. App'x 48, 49 (3d Cir. 2014). PLAN must show that a preliminary injunction is "the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). PLAN must also "produce affirmative evidence indicating that [it] will be irreparably harmed should that relief be denied." *Marxe v. Jackson*, 833 F.2d 1121, 1127 (3d Cir. 1987). "[A]ttorney argument cannot establish a showing of irreparable harm." *Bullock v. Carney*, 463 F. Supp. 3d 519, 524 (D. Del. 2020); *see also id.* at 525 ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction." (quoting 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2949 at 237 (3d ed.))).

According to PLAN, its members face irreparable harm if the Court does not order the installation of voting machines in DOC facilities because such members would be "completely disenfranchised" and would fear prosecution for voting via absentee ballot. OB at 16-17. But as discussed *supra*, eligible inmates or detainees would not be disenfranchised. At minimum, they are able to vote via absentee ballot and are free to petition the state court for relief to vote in-person. PLAN has adduced no evidence indicating eligible inmates or detainees would be deprived of any right to vote.

Plaintiff has also failed to submit evidence that any eligible incarcerated individual fears prosecution. And the argument is simply implausible under the circumstances. There is no

criminal statute that prohibits eligible inmates or detainees from voting via absentee ballot. Delaware agencies have made repeated and highly visible efforts to inform eligible individuals in custody of their ability to vote and facilitate their participation. Perhaps most importantly, the Attorney General is statutorily required to prepare and approve absentee ballot documents issued by the DOE and her office has already affirmed it has no intention of prosecuting eligible inmates or detainees.

Given these facts, the lone case Plaintiff cites in support of its argument, *ACLU v. Reno*, 31 F. Supp. 2d 473 (E.D. Pa. 1999), is simply inapposite. In *Reno*, website operators and online content providers challenged on First Amendment grounds a federal statute criminalizing content that would be "harmful" to minors. 31 F. Supp. 2d at 476-77. In granting the challengers' motion for a preliminary injunction, the trial court found the plaintiffs had established irreparable harm due to "self-censorship" to avoid criminal prosecution under the statute or, if they did not self-censor, would face criminal prosecution. *Id.* at 497. Here, there is no risk of criminal prosecution that would lead to individuals avoiding absentee voting, and Plaintiff has submitted no evidence to the contrary.

**D. <u>The Balance of the Harms Weighs Against a Preliminary Injunction.</u>**

Finally, Plaintiff has failed to meet its burden to establish that granting a preliminary, mandatory injunction would not cause greater harm to Defendants and the public interest favors relief. PLAN contends that any "administrative burden" on the State cannot outweigh "the harm of deprivation of constitutional rights." OB at 17. But again, there is no deprivation of constitutional rights. The status quo is that eligible inmates and detainees have full ability to exercise their right to vote, facilitated and encouraged by the DOE and DOC.

As discussed supra, granting the requested injunction would create a harm to the state. But there are considerations beyond the administrative or logistical difficulties an injunction would pose. "[W]hen the preliminary injunction provides for mandatory relief, it is particularly appropriate to weigh the possible harm to other interested parties." *Punnett*, 621 F.2d at 587. PLAN fails to demonstrate that the requested mandatory injunction is in the public interest, and, in fact, the contrary is true. Despite eligible incarcerated individuals having the ability to vote absentee, the injunction would require the state to allocate significant public funds and public resources to equip and staff DOC facilities with polling places. "The public . . . has an interest in the way public funds are used in the prison system." *Hill v. Smith*, 2005 WL 2666597, at *8 (M.D. Pa. Oct. 19, 2005) (denying motion for preliminary injunction). The balance of the harms weighs heavily against an injunction.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion for a preliminary injunction.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*<u>/s/ Zi-Xiang Shen</u>*
Kenneth L. Wan (#5667)
Zi-Xiang Shen (#6072)
Deputy Attorneys General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Kenneth.Wan@delaware.gov
Zi-Xiang.Shen@delaware.gov
*Attorneys for Defendants*

Date: February 16, 2024